IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JAMES ALBERT DIXON, | : | |
| Plaintiff, | : | |
| VS. | : | NO. 5:11-CV-443 (MTT) |
| MICHAEL J. ASTRUE, | : | SOCIAL SECURITY APPEAL |
| Defendant. | : | |

## RECOMMENDATION

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff James Albert Dixon's claim for a period of disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). In support of his request for remand, Plaintiff argues (1) that the Administrative Law Judge (ALJ) erred in finding that Plaintiff had no exertional limitations, (2) that the ALJ did not give the appropriate consideration to the consultive psychological evaluation performed by Dr. Elizabeth Coleman, and (3) that the ALJ erred by failing to find that Plaintiff's mental impairments satisfied a statutory listing. Because substantial evidence supports the ALJ's finding that Plaintiff is not disabled, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

At the time of the administrative hearing before the ALJ, Plaintiff was forty-one years old and suffered from blindness in his right eye, borderline intellectual functioning, obesity, degenerative arthritic changes in his bilateral knees, high blood pressure, insomnia, anxiety, and depression. AR 34-36 (Doc. 11-2). Prior to his alleged onset date of September 29, 2008,

Plaintiff worked as a tire and lube technician, a fork lift driver, and an order filler. Id. at 20-21, 47-49.

On February 17, 2009, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income. Plaintiff's applications were denied initially and upon reconsideration. Following a hearing before the ALJ, a written decision finding Plaintiff not disabled was issued. The Appeals Council declined to review the decision. Thereafter, on November 4, 2011, Plaintiff filed this appeal.

STANDARD OF REVIEW

District courts have a limited role in reviewing claims brought under the Social Security Act. Review of the Commissioner's decision is restricted to a determination of whether the decision is supported by substantial evidence and whether the correct legal standards were applied. Walker v. Bowen, 826 F.2d 996, 1000 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, a court's role in reviewing claims brought under the Social Security Act is quite narrow.

District courts must defer to the Commissioner's factual findings. Courts may not decide facts, re-weigh evidence, nor substitute their judgment for that of the Commissioner. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Credibility determinations are left to the Commissioner and not to the courts. Carnes v. Sullivan, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). See also Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Courts must scrutinize the entire administrative record

(AR) to determine the reasonableness of the Commissioner's factual findings. Bloodsworth, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if it is supported by substantial evidence. Id.

The Commissioner's findings of law are given less deference. Courts must determine if the Commissioner applied the proper standards in reaching a decision. Harrell v. Harris, 610 F.2d 355, 359 (5th Cir. 1980). Courts must therefore consider any questions of law *de novo*, and "no…presumption of validity attaches to the [Commissioner's] conclusions of law, including determinations of the proper standards to be applied in reviewing claims." Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). The Commissioner's failure to apply the correct legal standards or to provide a sufficient factual basis for the court to determine that the correct legal standards have been followed is grounds for reversal. Id.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity due to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of a least twelve months. 42 U.S.C. § 423(d)(1)(A).

When analyzing the issue of disability, the Commissioner must follow a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether or not the claimant is currently engaged in substantial gainful activity. Second, upon a finding that the claimant is not working, the Commissioner determines whether the claimant has any impairment that prevents the performance of basic work activities. Next, if the existence of such impairments has been found, the Commissioner determines whether the impairment(s) meets or medically equals the severity of one or more of the specified impairments listed in

Appendix 1 of Part 404 of the regulations. If the claimant's impairments do not meet or medically equal a listed impairment, the Commissioner must proceed to evaluate the claimant's residual functional capacity (RFC) for work. Fourth, using the claimant's RFC, the Commissioner determines whether the claimant is able to perform the physical and mental demands of his past work despite the impairments. Finally, and only when it has been determined that the claimant is unable to perform his or her past work, the Commissioner must determine whether there are sufficient numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and past work experience.

## DISCUSSION

The Commissioner's decision must be affirmed because the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. Plaintiff contends (1) that the ALJ erred in finding that Plaintiff had no exertional limitations, (2) that the ALJ did not give the appropriate consideration to the consultive psychological evaluation performed by Dr. Elizabeth Coleman, and (3) that the ALJ erred by failing to find that Plaintiff's mental impairments satisfied a statutory listing. As discussed below, there is sufficient evidence in the record to support the ALJ's finding that Plaintiff is not disabled.

### The ALJ's Findings

At step one of the sequential evaluation process, the ALJ concluded that Plaintiff had not engaged in in substantial gainful activity since his alleged onset date of September 29, 2008. AR 12 (Doc. 11-2). At step two, the ALJ determined that Plaintiff suffered from the severe impairments of blindness in the right eye, borderline intellectual functioning, alcohol abuse in short-term remission, and obesity. Id. The ALJ also found that Plaintiff suffered from the non-severe impairments of high blood pressure, allergies, high cholesterol, insomnia, anxiety,

4

depression, mild degenerative arthritic changes in bilateral knees, diabetes mellitus, speech impediment, and headaches. Id. At step three, the ALJ found that Plaintiff's impairments did not, alone or in combination, meet or medically equal any of the impairments listed in Appendix 1 to Subpart P of Part 404 of Chapter 20 of the Code of Federal Regulations (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). AR 15 (Doc. 11-2) Consequently, but before moving to step four, the ALJ proceeded to consider Plaintiff's residual functional capacity or RFC.

The ALJ found that Plaintiff had the capacity to perform a full range of work at all exertional levels but that Plaintiff should never climb ladders, ropes or scaffolds although he is able to occasionally climb ramps or stairs. Plaintiff's visual limitation precludes work that requires good depth perception, such as driving, working at unprotected heights, or working with hazardous machinery. Plaintiff's mental limitations limit him to simple, routine, and repetitive tasks where there is no literacy required. Plaintiff should not be required to perform pace work or to perform at a production rate. Plaintiff can have occasional interaction with his co-workers but should have no interaction with the general public. AR 15 (doc. 11-2).

At step four, the ALJ found that Plaintiff was not able to perform any past relevant work. AR 20 (Doc. 11-2). At step five, the ALJ found that, despite Plaintiff's limitations, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed based on his age, education, work experience, and RFC. AR 21 (Doc. 11-2).

**Plaintiff's Exertional Limitations**

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC by finding that Plaintiff did not have any exertional limitations. Plaintiff's argument focuses on the ALJ's finding that Plaintiff's degenerative arthritis, anxiety, and insomnia failed to constitute severe impairments

because those impairments did not meet the durational requirement. Plaintiff appears to contend that because those impairments were not found to be severe impairments, the ALJ failed to properly consider them in determining Plaintiff's RFC.

It is unclear whether the ALJ correctly applied the durational requirement to Plaintiff's degenerative arthritis, anxiety, and insomnia at step two of the sequential evaluation process. To qualify as a severe impairment at step two, an impairment must "be expected to result in death or [have] lasted or . . . be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505; Barnhart v. Wilson, 535 U.S. 212, 214 (2002). In discussing Plaintiff's degenerative arthritis, anxiety, and insomnia in this case, the ALJ determined that because each of those impairments had only recently been treated, "the impairment does not meet the durational requirement at this time." AR 13 (Doc. 11-2). By ending her analysis at that point, it does not appear that the ALJ considered whether the impairments could be expected to last for twelve months.

Although the ALJ potentially erred in finding that Plaintiff's degenerative arthritis, anxiety, and insomnia failed to meet the durational requirement, such error was harmless because all of Plaintiff's impairments were considered when determining Plaintiff's RFC. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Burgin v. Commissioner of Social Sec., 420 Fed. Appx. 901, 903 (11th Cir. 2011). Because the ALJ found that Plaintiff suffered from the severe impairments of blindness in the right eye, borderline intellectual functioning, alcohol abuse in short-term remission, and obesity, the ALJ proceeded further in the sequential evaluation process to determine Plaintiff's RFC.

Despite the ALJ's finding that Plaintiff's degenerative arthritis, anxiety, and insomnia were non-severe, these impairments were accounted for in Plaintiff's RFC determination. When

determining a claimant's RFC, the ALJ is required to consider all impairments, including both severe and non-severe impairments. 20 C.F.R. § 404.1545(a)(2). In this case, the ALJ considered all of Plaintiff's symptoms, including those caused by non-severe impairments.

With respect to Plaintiff's degenerative arthritis, the ALJ noted that the x-ray of Plaintiff's knees showed only mild degenerative arthritic changes. AR 18 (Doc. 11-2); AR 459 (Doc. 11-7). Plaintiff's medical records also show that Nurse Regina Andrews noted that Plaintiff suffered from unspecified joint pain in November 2010 and February 2011. AR 453-58 (Doc. 11-7). Nurse Andrews observed that Plaintiff's gait was normal. There is no indication from Plaintiff's medical record that Plaintiff's joint pain interfered with his ability to perform basic work activities. See Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (stating that the mere existence of an impairment does not reveal the extent to which the plaintiff's ability to do work is limited); see also McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

The ALJ properly considered Plaintiff's anxiety and insomnia when determining Plaintiff's RFC. AR 18 (Doc. 11-2). The ALJ noted that Plaintiff denied anxiety to Dr. Coleman. Id.; AR 370-74 (Doc. 11-7). The ALJ also noted that Plaintiff was assessed with insomnia by Nurse Andrews. AR 18 (Doc. 11-2); AR 464 (doc. 11-7). Although Plaintiff's subjective testimony indicates that his anxiety limits his ability to do work, Plaintiff has failed to cite to medical records indicating that Plaintiff's anxiety or insomnia interfered with his ability to do work. Moreover, the ALJ found Plaintiff's subjective testimony not credible to the extent that it was inconsistent with the RFC assessment. Accordingly, there is substantial evidence to support the ALJ's findings regarding Plaintiff's lack of exertional limitations.

**Consideration Given to Psychological Consultative Examiner**

Plaintiff argues that the ALJ afforded too much weight to Dr. Coleman's psychological evaluation of Plaintiff. Plaintiff contends that Dr. Coleman's assessment of Plaintiff's mental capacity understates Plaintiff's ability to perform work. Specifically, Plaintiff contends that he is unable to handle his finances due to his mental capacity and maintains that he was in special education classes throughout his schooling. Plaintiff's argument largely focuses on alleged errors and factual inconsistencies in Dr. Coleman's report. Although Plaintiff suggests that the ALJ should have deferred to a different medical opinion, Plaintiff does not cite to an alternative opinion upon which the ALJ should have relied.

The ALJ gave appropriate weight to Dr. Coleman's evaluation regarding Plaintiff's mental capacity. An ALJ should afford considerable weight to the opinion of treating physicians absent good cause to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). It follows that an ALJ should not credit the opinions of consulting physicians over those of a treating physician unless the objective medical evidence does not support the treating physician's opinion. See id. Although the ALJ relied upon Dr. Coleman's evaluation throughout her opinion, the ALJ did not credit Dr. Coleman over a treating physician. There is no evidence in the record from a treating physician contradicting Dr. Coleman's evaluation. The evidence in the record from Plaintiff's treating physicians at River Edge Behavior Health Center describe Plaintiff's alcoholism, but those records do not discuss Plaintiff's mental capacity. In fact, those records indicate that Plaintiff was never diagnosed with personality disorders or mental retardation. AR 536 (Doc. 11-9).

The record supports the ALJ's finding that Plaintiff retained the capacity to perform simple, routine tasks where literacy was not required, where there was no production rate or pace work, and where there should be only occasional interaction with co-workers and no interaction

with the general public. Dr. Coleman's examination showed that Plaintiff was pleasant and cooperative, had a normal mood, was fully oriented, and had an adequate memory. AR 371-73 (Doc. 11-7). After administering the Weschler Adult Intelligence Scale, 4th Edition (WAIS-IV), Dr. Coleman diagnosed Plaintiff with borderline intellectual functioning. Id. Although Plaintiff disputes Dr. Coleman's finding that Plaintiff is able to handle his finances, Plaintiff testified at the hearing before the ALJ that he "ain't good at that" rather than that he was unable to do so. AR 43 (Doc. 11-2). Moreover, Plaintiff informed Dr. Coleman that he was able to handle his finances. AR 371 (Doc. 11-7). As such, Plaintiff has failed to show that the ALJ erred by giving considerable weight to Dr. Coleman's psychological examination report.

## Statutory Listing

Plaintiff contends that the ALJ erred by failing to find that Plaintiff's mental impairments satisfied the requirements of section 12.05(C) of the statutory Listing of Impairments. See 20 C.F.R. pt. 404, subpt. P, app. 1. Section 12.05 contains the statutory listing for mental retardation. Id. at § 12.05. "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. To satisfy section 12.05, the claimant must show (A) mental incapacity by dependence upon others for personal needs and inability follow directions; or (B) a valid verbal, performance, or full scale IQ of 59 or less; or (C) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or (D) a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Id.

Pursuant to section 12.05(C), a claimant generally meets the criteria for presumptive disability when the claimant presents a valid IQ score of 60 to 70 and evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities. Id.; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). In the Eleventh Circuit, a valid IQ score may not be conclusive of mental retardation, however, if "the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 at 837 (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)). As such, a plaintiff can have a valid IQ score between 60 and 70 and not meet statutory listing 12.05(C). See Popp, 779 F.2d at 1499 (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence in the record).

In this case, the ALJ evaluated whether Plaintiff's mental impairments met section 12.05. AR 13-14 (Doc. 11-2). The ALJ found that Plaintiff failed to satisfy subsection A, B, C, or D of section 12.05. Id. Regarding the requirements of subsection C, the ALJ found that although Plaintiff scored a 66 on the Verbal Comprehension WAIS-IV IQ test, "the overall evidence of record does not support that the claimant has severe deficits in adaptive or cognitive functioning that would meet a listing." AR 14 (11-2). The ALJ noted that despite Plaintiff's Verbal Comprehension score of 66, Plaintiff' scored above 70 in all of the other tests, including a Perceptional Reasoning score of 79, a Working Memory score of 74, a Processing Speed score of 89, and a Full Scale IQ of 71. Id.; AR 372 (Doc. 11-7). Later in her opinion, the ALJ listed additional evidence weighing against a finding that Plaintiff suffered severe deficits in adaptive or cognitive functioning, including: Plaintiff's work history, Plaintiff's statement to Dr. Coleman

that he was the primary caregiver to his two-year-old son, Plaintiff's testimony that he was able to perform most of his activities of daily living, Plaintiff's ability to graduate from high school and attend one semester of community college, Plaintiff's statement to Dr. Coleman that he was able to handle his finances, and Plaintiff's ability to express himself with no indication of a learning, hearing, or sight disability. AR 20 (Doc. 11-2).

The ALJ also stated that Plaintiff failed to provide conclusive evidence that Plaintiff was in special education classes as alleged and that Plaintiff failed to provide a requisite IQ score under 70 prior to age 22. In support of his claim that he was in special education classes throughout school, Plaintiff submitted a copy of his high school transcript. AR 333 (Doc. 11-6). Plaintiff's transcript indicates that he was ranked 0 out of 543 graduates. Id. The transcript also identifies Plaintiff's Math and English courses as "RES", but there is nothing in the record to support Plaintiff's assertion that RES denotes special education classes. The ALJ also noted that Plaintiff presented conflicting testimony regarding his special education courses. AR 14 (Doc. 11-2).

Even if the ALJ incorrectly discounted Plaintiff's claims that he was in special education classes, substantial evidence supports the ALJ's finding that Plaintiff did not have severe deficits in adaptive or cognitive functioning that would satisfy a statutory listing. Plaintiff has failed to cite to objective medical evidence, other than the verbal IQ score, discounting the ALJ's finding that the overall evidence does not support Plaintiff's claim that he qualifies as mentally retarded pursuant to section 12.05(C). Where substantial evidence supports the ALJ's factual findings, this Court may not substitute its judgment for that of the ALJ. See Bloodsworth, 703 F.2d at 1239. Accordingly, Plaintiff has failed to show that remand is warranted in this case.

## CONCLUSION

After careful consideration of the entire record in this case, it appears that the ALJ properly evaluated Plaintiff's RFC and that the ALJ's findings are supported by substantial evidence. Accordingly, **IT IS RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this RECOMMENDATION with the district judge to whom this case is assigned WITHIN FOURTEEN(14) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 22nd day of February, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge